JANE and JACK ALLEN v. GIDEON WESTBROOK.

1. DEED OF GIFT. *Construction.* A conveyance by a husband to his wife of certain land in fee, and certain personalty absolutely, contained the following clause: "This deed of gift is made for the purpose of providing a home and subsistence for my said wife and two children now living, and any children which may hereafter be begotten in lawful wedlock of me and my said wife." *Held*, that the children took only a right to participate in the use and income of the prop- erty while members of the family during the life of the wife, and that upon her death without heirs the husband was entitled to the personalty *jure mariti*, and inherited the realty under the Code, sec- tion 2422.

2. ESTOPPEL. *Disclaimer of title under oath.* It is settled in this State, upon grounds of public policy, that a person can not set up title to

Allen *v.* Westbrook.

property after a solemn disclaimer of title under oath in the course of judicial proceedings, and the rule applied to an oral disclaimer; but the oath to be binding as an estoppel must be wilfully false, or must have the effect of misleading the other party to his injury.

3. SAME. *Oath. Conclusion of law.* A statement under oath as a witness by the grantor in a deed of gift, upon legal advice that the title to the personal property conveyed was not in him but in one of his children, who took only a usufructuary interest, offering the deed in evidence, is the statement of a conclusion of law, the legal effect of the deed, and not of a fact which can be said to be wilfully false.

## FROM SHELBY.

Appeal from the Chancery Court at Memphis. W. W. McDOWELL, Ch.

FINLAY & PETERS and B. J. KIMBROUGH for complainants.

WM. S. FLIPPIN for defendant.

COOPER, J., delivered the opinion of the court.

On February 14, 1877, the defendant, Gideon Westbrook, then married to Martha Westbrook, and having two children by a former wife, namely, Green, who has since died, and Jane, the complainant, who has since intermarried with Jack Allen, made and executed a deed of conveyance of his property, real and personal, which was duly acknowledged and registered. By this deed the complainant, for love and affection for his wife, Martha, conveyed to her certain land, describing it, to have and to hold to her, "her heirs and assigns forever in fee simple, free from all emcumbrances, debts or contracts of the grantor." He

also transferred and delivered to her by said convey-
ance certain mules and other personalty, "free from
all debts and encumbrances whatever." "This deed of
gift," says the conveyance, "is made for the purpose
of providing a home and subsistence for my said wife
and two children now living, and any children which
may hereafter be begotton in lawful wedlock of me
and my said wife aforesaid." Martha Westbrook died
about two years after the execution of the deed, without
ever having had a child by the defendant, Gideon
Westbrook, and without other heirs than her husband.
Green Westbrook, one of the defendant's children by
a former wife, also died after the deed was executed
without ever having married. The defendant continued
to live on the land and use the personalty until some-
time in the year 1880 or 1881, when a portion of
the personalty was levied on by executions on judg-
ments recovered against him for debt. His daughter,
Jane, had intermarried with Allen, and they were then
living in Memphis. The defendant came to them,
and told them that the property levied on belonged
to Jane, as well as the land, and induced them to
replevy the personalty, and afterward go upon the
land. On the trial of the replevin suit, the defendant
was examined as a witness, and testified that the prop-
erty levied on and replevied belonged to Jane, and
produced a certified copy of the deed as evidence of
the fact. The complainants were successful in the
replevin suit. The defendant afterward, to avoid a
warrant in a criminal prosecution for perjury, left the
premises and went to another county. He was, how-

ever, arrested, tried and acquitted of the offense. He then sought to regain possession of the land and personalty, which the complainants refused to surrender. He brought an action of replevin for the personalty, and an action of forcible entry and detainer for the land. Pending these suits, the present bill was filed to enjoin their prosecution, and to have the deed of conveyance construed. The defendant answered, and upon final hearing the chancellor held that the land reverted to the defendant upon the death of his wife, but that the defendant was estopped to dispute the title of his daughter to the personalty by reason of his having delivered it to her, and sworn that it was her property in her action of replevin against his creditor. Both parties appealed, each party from so much of the decree as was unfavorable.

The conveyance to the wife gives her the fee in the land and the absolute interest in the personalty, free from the husband's debts, in the granting clauses, and if nothing more appeared, upon the death of the wife, the personalty would have gone to the husband *jure mariti*, and the land would have been inherited by him under the Code, section 2422. The conveyance, however, adds: "This deed of gift is made for the purpose of providing a home and subsistence for my said wife and two children now living, and any children which may hereafter be begotton in lawful wedlock of me and my said wife aforesaid." There is no direct conveyance to the children of the property, or any interest therein, nor is the legal title charged with a trust in favor of the children by which an interest

in the *corpus* of the property would be vested in the children in *præsenti* or in remainder. The conveyance does not, therefore, fall within the class considered in *Beecher* v. *Hicks*, 7 Lea, 207, and other cases therein cited. It falls within another well recognized class; in which the legal title vests in the grantee, subject to a participation by the children in the use and income of the property while members of the family in the grantee's lifetime: *Hix* v. *Gosling*, 1 Lea, 560; *Mc-Call* v. *McCall*, 1 Tenn. Ch., 504; *Moore* v. *Simmons*, 2 Head, 546; and see *Davis* v. *Bawcum*, 10 Heis., 406. In this view the beneficial interest of the children ceased upon the death of Martha Westbrook, and the title to the property passed to the defendant.

It is insisted, however, on behalf of the complainants, that the defendant is estopped to assert title to the property by his statement under oath, in the replevin suit brought by the complainants against one of his creditors for some of the personalty, that the property sued for did not belong to him, but to the complainant, Jane, under the deed of gift. And it may be considered as settled by the decisions of this court that a person can not, upon grounds of public policy, be permitted to set up title to property after a solemn disclaimer of title under oath, or a solemn admission under oath of title in another, in a pleading or deposition in a previous suit: *McEwen* v. *Jenks*, 6 Lea, 289; *Cooley* v. *Steele*, 2 Head, 605; *Stillman* v. *Stillman*, 7 Baxt., 169; *Stephenson* v. *Walker*, 8 Baxt., 289; *McCoy* v. *Pearce*, Thomp. Cas., 145. It is equally well settled that such statements will not

estop the party from proving the truth, if he can show that they were made inconsiderately, by mistake, or without full knowledge of the facts: *Seay* v. *Ferguson*, 1 Tenn. Ch., 287; *Chilton* v. *Scruggs*, 5 Lea, 308; *Smith* v. *Fowler*, 12 Lea, 163; *Hamilton* v. *Zimmerman*, 5 Sneed, 39. In other words, the oath to be binding as an estoppel must be wilfully false, or must have the effect of misleading the other party to his injury: *Behr* v. *Insurance Company*, 2 Flip., 692. Our cases have generally involved admissions or statements by sworn pleadings or depositions, but, as statements *in pais* will often estop the party making them, an oral statement under oath, if wilfully false or acted upon, must be equally as binding as if reduced to writing. The statement held to be an estoppel in *McCoy* v. *Pearce*, Thomp. Cas., 147, seems to have been oral, having been made upon the examination of the party as a witness upon his *voire dire*. It would be more difficult to establish an oral statement satisfactorily, but when established its effect must be the same as if written. In the case before us, the statement is not only satisfactorily proved by others, but is admitted by the defendant himself, both in his answer and deposition. But, he says, he only stated what he had been told by others was the legal effect of the deed. The defendant is an ignorant negro, who can neither read nor write, and his legal adviser, as well as the court who tried the replevin suit, construed the deed as giving the property, after the death of Martha Westbrook, to complainant, Jane. Under these circumstances, we can not say that the state-

ment he made as a witness was wilfully false. He was really swearing to a conclusion of law, the legal effect of the deed, not to a fact. But his statements were acted upon by the complainants to their injury, and they are binding upon him, so far as they are concerned, whether true or false, for they undertook the expense of the suit and secured the property upon the faith thereof.

There is no estoppel as to the land, which was not involved in the suit, and as to which there are no solemn statements under oath.

The chancellor's decree will be affirmed. The costs of this court will be paid by the defendant, and the costs of the court below as directed by the chancellor.